# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANTHONY KELLY ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 19-10501** |
| **BERRY CONTRACTING, LP ET AL.** | **SECTION: "H"(1)** |

## ORDER AND REASONS

Before the Court are Defendant Berry Contracting, LP's Motion to Dismiss or Stay Pending Arbitration (Doc. 8); Defendant Benjamin Jacob's Motion to Compel Arbitration (Doc. 9); Plaintiffs' Motion to Strike Reply (Doc. 29); and Plaintiffs' Motion for Discovery (Doc. 30). For the following reasons, Plaintiffs' Motion to Strike Reply is **GRANTED IN PART**; Plaintiffs' Motion for Discovery is **DENIED**; and Defendants' Motions to Compel Arbitration are **GRANTED**.

## BACKGROUND

Plaintiffs Anthony Kelly and Wilfred Henry, Jr. bring claims for racial discrimination and retaliation against their employer Defendant Berry Contracting, LP d/b/a Bay Ltd. ("Bay") and intentional infliction of emotional

distress and assault against their supervisor Defendant Benjamin Jacob. Defendants have separately moved to compel arbitration and stay or dismiss this action in reliance on arbitration agreements that Plaintiffs each signed when they were hired by Bay. Plaintiffs oppose and file motions to strike Bay's reply memorandum and to engage in discovery regarding the arbitration agreements. This Court will consider each motion in turn.

## LAW AND ANALYSIS

### A. Motion to Strike

At the outset, the Court must address Plaintiffs' Motion to Strike Bay's Reply Brief. Plaintiffs argue that Bay's reply to its Motion to Compel Arbitration contains new evidence and arguments that are inappropriate in a reply. Plaintiffs have not, however, identified any *arguments* made by Defendant in its reply that are not responsive to the arguments raised by Plaintiffs in their opposition. That said, Defendant's reply includes several new pieces of evidence submitted in an attempt to remedy deficiencies in its original motion that were identified by Plaintiffs in their opposition. "[A] movant should not be permitted to cure by way of reply what is in fact a defective motion."[1] Accordingly, this Court will not consider this evidence in resolution

---

[1] Springs Indus., Inc. v. Am. Motorists Ins. Co., 137 F.R.D. 238, 240 (N.D. Tex. 1991) ("[W]here a movant has injected new evidentiary materials in a reply without affording the nonmovant an opportunity for further response, the court still retains the discretion to decline to consider them.").

of Bay's Motion to Compel Arbitration. The exhibits attached to Bay's reply are stricken from the record.

B. <u>Bay's Motion to Compel Arbitration and Plaintiffs' Motion for Discovery</u>

Defendants contend that when they were hired, Plaintiffs signed arbitration agreements agreeing to arbitrate the claims at issue here (the "Arbitration Agreements" or "Agreements"). Despite this, Plaintiffs have refused to arbitrate and instead brought claims in this Court. Defendants ask this Court to compel arbitration and stay or dismiss this action.

The Federal Arbitration Act ("FAA") provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.[2]

When deciding whether to compel arbitration pursuant to an arbitration agreement, courts in the Fifth Circuit apply a two-part test.[3] First, a court must determine that the parties agreed to arbitrate the relevant dispute.[4] To meet this element, a valid agreement to arbitrate must exist, and the dispute in question must fall within the scope of the arbitration agreement.[5] This first element stems from the FAA's directive that district courts must order parties to arbitration "upon being satisfied that *the making of the agreement for*

---

[2] 9 U.S.C. § 4.
[3] *See* Janvey v. Alguire, 847 F.3d 231, 240 (5th Cir. 2017).
[4] *Id.*
[5] *See id.*

*arbitration . . .* is not in issue."[6] "While there is a strong federal policy favoring arbitration, the policy does not apply to the initial determination whether there is a valid agreement to arbitrate."[7] Instead, courts apply state contract law to determine the validity of the arbitration agreement at this stage of the inquiry.[8] The parties seem to agree that Louisiana law applies.

Second, once satisfied that an agreement to arbitrate is valid, and that the dispute in question falls within the scope of that arbitration agreement, a court must then decide whether any federal statute or policy renders the relevant claim nonarbitrable.[9] If no federal statute or policy renders the claim nonarbitrable, the court must compel arbitration.[10]

### 1. *Seamen Exclusion*

First, Plaintiffs argue that regardless of whether the Agreements are valid, they are exempt from arbitration under the FAA because they are seamen. Section 1 of the FAA exempts from arbitration "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."[11] The criteria used to determine whether a party is a seaman under the FAA is the same as that used under the Jones Act.[12]

---

[6] 9 U.S.C. § 4 (emphasis added).
[7] *Janvey*, 847 F.3d at 240 (quoting Banc One Acceptance Corp. v. Hill, 367 F.3d 426, 429 (5th Cir. 2004)).
[8] Klein v. Nabors Drilling USA L.P., 710 F.3d 234, 236 (5th Cir. 2013).
[9] *Janvey*, 847 F.3d at 240.
[10] *See* 9 U.S.C. § 4.
[11] 9 U.S.C. § 1.
[12] Buckley v. Nabors Drilling USA, Inc., 190 F. Supp. 2d 958 (S.D. Tex.), *aff'd sub nom.* Buckley v. Nabors Drilling USA, 51 F. App'x 928 (5th Cir. 2002).

To classify as a seaman under the Jones Act, an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission, and he must have a connection to a vessel in navigation that is substantial in terms of both its duration and its nature.[13] Ultimately, the court must determine whether "the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on a vessel at a given time."[14] The allegations of the Complaint establish that Plaintiffs worked as welders at the Washington Parish Energy Center and were staying at a local hotel at the time of the incidents at issue. They allege that after reporting the incidents they were transferred to another project offshore on a drilling platform.

The Fifth Circuit has "made clear in the past that the party resisting arbitration shoulders the burden of proving that the dispute is not arbitrable."[15] Plaintiffs have not carried this burden. Plaintiffs have not provided this Court with sufficient information—regarding their work duties offshore, whether their work offshore was on a vessel, or whether that vessel was in navigation—to enable this Court to determine Plaintiffs' seaman status.

In their Motion for Discovery, Plaintiffs ask for additional time to conduct discovery regarding their seaman status. However, much of the information necessary to determine seaman status, such as work duties, is wholly within the personal knowledge of Plaintiffs. Plaintiffs do not need discovery to provide the Court with this base level of information.

---

[13] Chandris, Inc. v. Latsis, 515 U.S. 347, 368 (1995).
[14] *Id.*
[15] Overstreet v. Contigroup Companies, Inc., 462 F.3d 409, 412 (5th Cir. 2006).

Nevertheless, they have failed to do so. This failure, coupled with the unconvincing information they did provide, leads this Court to believe that Plaintiffs' request for discovery on seaman status is little more than a stalling tactic. For those reasons, the request is denied, and the Court finds that Plaintiffs are not exempt from arbitration under the seaman exemption.

### 2. *Authentication*

Plaintiffs next set forth a series of arguments regarding the validity of the Arbitration Agreements. First, they argue that Defendants have not carried their burden to prove an agreement to arbitrate because the Arbitration Agreements attached to their motions are not properly authenticated. Defendants attach the Agreements to the declaration of Travis Chaney, Bay's Health, Safety, Environmental and Human Resources Manager. Chaney states, under penalty of perjury, that "attached hereto as Exhs. 1–3 are Arbitration Agreements signed by Messrs. Kelly and Henry as well as Benjamin Jacob." The Agreements are signed by Plaintiffs and Stacy Wright on behalf of Bay. Plaintiffs complain that because Chaney did not sign the Agreements, he therefore does not have the personal knowledge necessary to authenticate them.

"To authenticate documents used to support a motion, a party must attach the documents as exhibits to an affidavit made by a person through whom exhibits could be admitted into evidence at trial."[16] Rule 901(a) of the Federal Rules of Evidence provides that "the requirement of authentication or identification as a condition precedent is satisfied by evidence sufficient to

---

[16] BP Expl. & Prod. Inc. v. Cashman Equip. Corp., No. H-13-3046, 2016 WL 1387907, at *2 (S.D. Tex. Apr. 8, 2016).

support a finding that the matter in question is what its proponent claims." The Fifth Circuit "does not require conclusive proof of authenticity before allowing the admission of disputed evidence."[17] This Court finds that the declaration of Bay's human resources manager is sufficient to establish the authenticity of Bay's agreements with its employees. This is especially true in light of the fact that Plaintiffs do not actually allege that the agreements attached to Defendants' Motion are not authentic or that they did not sign them.

### *3. Validity of Agreements*

Plaintiffs next argue that the Arbitration Agreements are invalid because they are adhesionary. "[A] contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party. Often in small print, these contracts sometimes raise a question as to whether or not the weaker party actually consented to the terms."[18] However, "not every contract in standard form may be regarded as a contract of adhesion."[19] In *Duhon v. Activelaf, LLC*, and *Aguillard v. Auction Management Corp.*, the Louisiana Supreme Court set forth factors to consider to determine the enforceability of the arbitration clause in a standard form contract: "(1) the physical characteristics of the arbitration clause, (2) the distinguishing features of the arbitration clause, (3) the mutuality of the arbitration clause, and (4) the relative bargaining strength

---

[17] In re McLain, 516 F.3d 301, 308 (5th Cir. 2008).
[18] Aguillard v. Auction Mgmt. Corp., 908 So. 2d 1, 9 (La. 2005).
[19] Duhon v. Activelaf, LLC, 2016 WL 6123820, at *4 (La. 2016).

of the parties."[20] The court "effectively established a framework for examining the validity of an arbitration clause within a standard form contract by generally describing the characteristics of an unenforceable adhesionary agreement."[21] It further noted that the "real issue in a contract of adhesion analysis is not the standard form of the contract, but rather whether a party truly consented to all the printed terms. Thus, the issue is one of consent."[22] "The party seeking to invalidate the contract as adhesionary bears the burden of demonstrating that the non-drafting party did not consent to the terms or his consent was vitiated by error."[23]

In *Duhon*, the Louisiana Supreme Court considered an arbitration clause in an agreement that patrons to Sky Zone, an indoor trampoline park, were required to sign prior to entering the facility.[24] The court concluded that the agreement was adhesionary and unenforceable because (1) the arbitration provision was "not relegated to a separate paragraph or set apart in some explicit way" but was instead "camouflaged" within a larger paragraph unrelated to arbitration, and (2) the agreement lacked mutuality and did not bind Sky Zone to arbitration.[25]

In *Aguillard*, the court considered an arbitration agreement in an auction sales agreement.[26] The court held that the agreement was not

---

[20] *Id.*
[21] *Id.*
[22] *Aguillard*, 908 So. 2d at 9.
[23] Herring v. Patterson Structural Moving & Shoring, LLC, No. CV 17-8677, 2017 WL 6540614, at *2 (E.D. La. Dec. 21, 2017).
[24] *Duhon*, 2016 WL 6123820, at *1.
[25] *Id.* at *4.
[26] *Aguillard*, 908 So. 2d at 5.

adhesionary because (1) the agreement was in a single sentence paragraph set apart from each other paragraph, in a short, two-page document; (2) the provision was not concealed; (3) the agreement did not lack mutuality because the defendants did not reserve the right to litigate; and (4) the underlying transaction was not such a necessary transaction as to compel the plaintiff to enter it.[27]

Here, the Agreements at issue are two-page, stand-alone documents titled "Arbitration Agreement." In their declarations, Plaintiffs state that the Agreements were "difficult to read because the writing was blurry and in small print."[28] Indeed, the typeface of the Agreements attached to this Motion as exhibits is blurry.[29] However, Defendants acknowledge that Bay did not maintain the original Agreements but scanned and electronically stored the Agreements after their execution.[30] Presumably, the fuzziness of the exhibit is a result of being scanned and reprinted and does not accurately reflect the document as it was when signed by Plaintiffs. Even assuming that the Agreements attached to this motion as exhibits accurately represent the physical characteristics of the Agreements at the time they were signed, the Agreements remain legible and are clearly titled "Arbitration Agreement." The font is an average size.[31]

---

[27] *Id.* at 17.
[28] Docs. 21-2, 21-3.
[29] Doc. 8-3.
[30] Doc. 21-4, p. 2.
[31] *See Aguillard*, 908 So. 2d at 16 (noting that nine-point font was "not unreasonably small").

The Agreements provide that "upon demand" of Bay, Plaintiffs must submit to binding arbitration. The Agreements neither expressly reserve Bay's right to litigate nor prohibit Plaintiffs from requesting arbitration.[32]

Plaintiffs suggest that the Agreements were a result of unequal bargaining power. Louisiana appellate courts have, however, rejected this argument in the employer-employee setting. In *Stadtlander v. Ryan's Family Steakhouses, Inc.*, the Louisiana Second Circuit Court of Appeal held that it was "reluctant to find the requisite difference in bargaining positions between [an employee and employer] to justify labeling the present agreement a contract of adhesion" where the employee "could have found a similar position elsewhere [and] could have avoided the arbitration agreement had she objected to it by simply choosing to work elsewhere."[33]

Accordingly, having considered the factors espoused in *Duhon* and *Aguillard*, this Court finds that the Arbitration Agreements at issue here do not have the "characteristics of an unenforceable adhesionary agreement."[34] The Agreements were clearly labeled, not concealed in any way, and Plaintiffs were free to object to the Agreements by choosing different employment. It cannot be said that Plaintiffs did not consent to the Agreements.

---

[32] *Id.* (noting that "[n]owhere in the document do the defendants reserve to themselves the right to litigate any issue arising from the contract).

[33] 794 So. 2d 881, 890 (La. App. 2 Cir. 2001); *see also* Simpson v. Pep Boys-Manny Moe & Jack, Inc., 847 So. 2d 617, 622 (La. App. 4 Cir. 2003) (stating that the plaintiff had "the option of not signing the agreement and finding work at another automotive repair shop if he did not wish to be bound to arbitration"); Rogers v. Brown, 986 F. Supp. 354, 359 (M.D. La. 1997) ("Plaintiff has failed to submit any evidence that other similar jobs were not available and thus, she was required to take the KFC job even though she did not approve of the arbitration provision.").

[34] *See Duhon*, 2016 WL 6123820, at *4.

In their Motion for Discovery, Plaintiffs ask this Court to allow additional time for discovery on the issue of the validity and enforceability of the Agreements. Plaintiffs seek discovery on the following issues: (1) whether there was cause to support the Agreements, (2) whether the agreements establish a mutual obligation, (3) the physical characteristics of the original agreements, and (4) the hiring packet signed by Plaintiffs. Plaintiffs do not show how discovery on these issues would aid the Court in this analysis. As evidenced above, the Court can readily assess whether the Agreements are adhesionary based solely on the Agreements themselves. Under Louisiana contract law, "the meaning and intent of the parties to the written contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence."[35] Accordingly, discovery on the meaning of the Arbitration Agreements would be neither helpful nor appropriate.

### 4. *AAA Rules*

Plaintiffs next argue that the Agreements are invalid because they require arbitration procedures that are inconsistent with the American Arbitration Association ("AAA") rules. Specifically, the Arbitration Agreements require that claims be "submitted to arbitrators for final determination within six (6) months following the date demand for arbitration is first made, regardless of anything to the contrary contained in the Rules of the American Arbitration Association." They argue that because the procedures set forth in the Agreements violate the AAA rules, the AAA will

---

[35] Hampton v. Hampton, Inc., 713 So. 2d 1185, 1189 (La. App. 1 Cir. 1998); LA. CIV. CODE art. 2046.

decline to administer the arbitration in this case and thus no forum for arbitration exists. Plaintiffs also complain that Bay has not submitted its ADR program to AAA for approval.

These arguments have no bearing on whether the Arbitration Agreements are valid and enforceable. Louisiana law is clear that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[36] An inconsistency between the arbitration procedures contained in an agreement and the AAA rules are not grounds for invalidating an agreement to arbitrate. These issues are best left to consideration by the arbitrator.

In their Motion for Discovery, Plaintiffs also request discovery on this issue, arguing that they are "entitled to engage in discovery as to whether the AAA will even administer the claims at issue in this lawsuit considering" the six-month limitation. The Court's analysis above demonstrates why discovery on such an issue would be fruitless. Plaintiffs' Motion for Discovery is denied.

Accordingly, the Court finds that the Agreements are valid and enforceable. Plaintiffs do not dispute that their claims fall within the scope of the Arbitration Agreements. Plaintiffs do not point to any federal statute or policy that renders their claims non-arbitrable. Arbitration of Plaintiffs' claims against Bay is therefore appropriate, and Bay's Motion is granted.

C. **Jacob's Motion to Compel Arbitration**

---

[36] LA. REV. STAT. § 9:4201.

In his Motion, Jacob argues that although there is no arbitration agreement between Plaintiffs and himself, the claims against him should also be submitted to arbitration because they are inextricably linked to the claims against Bay. The Fifth Circuit has held that the "application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."[37] This Court agrees that Plaintiffs' claims against Jacob and Bay each arise out of the same incident and are inextricably intertwined. Plaintiffs do not set forth any arguments to the contrary. Accordingly, Plaintiffs' claims against Jacob shall be arbitrated as well.

### D. Stay or Dismissal

Finally, Defendants ask this Court to dismiss or stay this matter pending arbitration. Section 3 of the Federal Arbitration Act provides that district courts shall stay proceedings when claims are properly referable to arbitration.[38] "This rule, however, was not intended to limit dismissal of a case in the proper circumstances. The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."[39] Accordingly, dismissal is appropriate here.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Strike Reply is **GRANTED IN PART**; Plaintiffs' Motion for Discovery is **DENIED**; and

---

[37] Grigson v. Creative Artists Agency L.L.C., 210 F.3d 524, 527 (5th Cir. 2000).
[38] 9 U.S.C. § 3.
[39] Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992).

Defendants' Motions to Compel Arbitration are **GRANTED**. The exhibits attached to Defendant Bay's Reply to its Motion to Compel Arbitration (Doc. 25) are **STRICKEN** from the record. Plaintiffs' claims are **DISMISSED**, and it is ordered that the parties arbitrate this dispute.

New Orleans, Louisiana this 13th day of November, 2019.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**